## FORD *et al.* v. TIFTON GUANO COMPANY.

1. When a distress warrant and landlord's lien for supplies are levied on the crops of the defendant, one holding a chattel mortgage on the crops given by the defendant may summarily foreclose his mortgage and

place the mortgage fi. fa. with the levying officer, and, in a rule to distribute the fund arising from the sale, may attack the contesting liens as fraudulent.

2. Where the legal remedy of foreclosure is adequate, a mortgage on personalty will not be foreclosed in equity.

3. The petition should have been dismissed on demurrer.

DECEMBER 15, 1915.

Equitable petition. Before Judge Thomas. Tift superior court. October 17, 1914.

The Tifton Guano Company filed a petition against Walter Ford and his wife, Mrs. Sibbie Ford, alleging, in substance as follows: Petitioner sold to Walter Ford guano to be used by him in furnishing two croppers on certain described land, and the guano was so used. Ford gave to petitioner a mortgage on the growing crops on this land. For a number of years Ford has had absolute and entire control of the premises described, cultivated the same as his own, and led both petitioner and the world at large to believe that he was the owner. Mrs. Sibbie Ford knew that her husband was managing and in control of the property, dealing with it as his own, and holding it out to the world as his property, and did not put petitioner on notice that she had any right, title, interest or equity in the property, or that the property was held by her husband as tenant and not in his own right or as her agent. Ford has managed the property for the use and benefit of himself and wife, and at no time did the relation of landlord and tenant exist between them, nor did Mrs. Ford ever contract to rent the premises to her husband. Yet Mrs. Ford has foreclosed a distress warrant and a landlord's lien for supplies against her husband, which has been levied by the sheriff of the county on the crops growing on the premises and embracing those included in petitioner's mortgage. Mrs. Ford did not furnish the supplies as alleged in her affidavit; and the issuance and levy of the distress warrant and the landlord's lien for supplies were in pursuance of a scheme and conspiracy between Ford and his wife to defraud petitioner. The crops grown on the land that Mrs. Ford claims to own were cultivated by W. F. Ford and J. C. Bray as croppers, to whom Ford had advanced about $200. The plaintiff's mortgage covered crops other than those grown on the premises claimed by Mrs. Ford. Walter Ford is insolvent and is using the corn, and disposing of the cotton described in the plaintiff's mortgage.

The prayers are, for a receiver to take charge of, gather, and sell the crops, and that the net proceeds, after paying whatever amount may be due the croppers, be applied to the plaintiff's mortgage; for the cancellation of any contract of rent between Ford and his wife; for injunction against the sheriff's enforcing the wife's distress warrant and landlord's lien; for judgment against Walter Ford; and for process. By amendment it was alleged that Walter Ford and his wife entered into a conspiracy to defraud petitioner by allowing Walter Ford to deal with her property in such a manner as to hold out to petitioner and the world, and to create the belief, that the title to the land was in the husband. The defendants demurred generally and specially. The demurrers were overruled, and the case proceeded to trial, with a verdict in favor of the plaintiff. The defendants moved for a new trial, which was refused.

*J. S. Ridgdill, S. F. Mitchell,* and *Claude Payton,* for plaintiffs in error. *R. D. Smith* and *Fulwood & Skeen,* contra.

EVANS, P. J. (After stating the foregoing facts.) The plaintiff does not allege sufficient facts to justify an equitable foreclosure of its mortgage, or an equitable intervention against the wife's processes to collect the amount claimed from her husband as due for rent and supplies. Mrs. Ford foreclosed a distress warrant and a lien for supplies against her husband, and these processes were levied by the sheriff of the county. The plaintiff has a mortgage on some of the crops. Instead of foreclosing its mortgage, and placing the mortgage fi. fa. with the levying officer, it resorts to equity. If it had foreclosed its mortgage and the crop had been sold by the sheriff, the respective rights of the claimants of the fund could have been expeditiously and completely settled in a rule to distribute the fund. *Smith* v. *McPherson,* 78 *Ga.* 84. Why attempt a resort to equity? The facts do not show any necessity for an equitable foreclosure of its mortgage. If the relation of landlord and tenant between the husband and wife be collusive and not real, such fact could be shown in a proceeding to distribute the money, so as to give priority to the plaintiff's mortgage. Any disposition or despoliation of the mortgaged property may be prevented by the plaintiff's foreclosure of its mortgage. The allegation that Walter Ford worked the farm with two croppers is not sufficient to sustain the petition on the theory

of avoidance of a multiplicity of suits. Process is neither prayed nor issued against them. It is alleged that these croppers owe Walter Ford about $200, and it is not even hinted that their interest would be more than sufficient to pay this sum. Besides, these croppers are not attempting or even threatening to foreclose any lien for labor, notwithstanding the crops are levied on by virtue of Mrs. Ford's liens. Even should they foreclose their laborers' liens, their rights could be settled in the rule to distribute the proceeds of the sale. The plaintiff's sole appeal for an equitable foreclosure is that the wife's claim of lien for rent and supplies is fraudulent. This charge is based on the allegation that the husband and wife conspired to defraud the plaintiff by allowing the husband to hold out the land as his property, and to create the belief that he was the actual owner of it. There is no specific statement of facts covering the alleged conspiracy, nor any contention that the wife personally made any misrepresentations to deceive the plaintiff. Even if such allegation be deemed, as against a general demurrer, a sufficient charge that the wife's liens are fraudulent, this alone would not entitle the plaintiff to an equitable foreclosure of its mortgage. There is no allegation that the crops are insufficient to pay all contending liens. The plaintiff declares that its mortgage also embraces crops of Ford not raised on Mrs. Ford's land; and it is not alleged that they are insufficient to pay the debt. Mrs. Ford is not alleged to be insolvent. The extraordinary remedy of injunction and receiver is a harsh one; and the rule is clear that it is not available except where the ordinary remedies are ineffectual or inadequate. The plaintiff admits that the property is in custodia legis, and that its mortgage is ripe for foreclosure. No obstacle lies in the way of its summary foreclosure as provided by statute. If this had been done, and the mortgage fi. fa. had been placed with the sheriff, the property would have been as securely preserved to the payment of liens against it as it would be in the hands of a receiver. There is no need of protection against possible loss by a change of the legal custodian. The plaintiff's ordinary remedies afforded it ample relief, and the court erred in overruling the demurrer to the petition. As the petition should have been dismissed, the subsequent trial was not authorized, and any verdict rendered therein is a nullity.    *Judgment reversed. All the Justices concur, except*

Lumpkin, J., dissenting. I can not concur in holding that the petition in this case was demurrable. It is declared by the Civil Code (1910), § 3305: "The holder of any mortgage of real or personal property, or both, . . shall be at liberty to foreclose such mortgage in equity according to the practice of the courts in equitable proceedings, as well as by the methods prescribed in the Code." On the face of this statute it would seem to give the holder of a mortgage the privilege of foreclosing in equity, or by equitable procedure. But it has been held that foreclosure in equity should not be resorted to where the remedy of foreclosure by ordinary statutory procedure furnishes complete and adequate relief. Under the facts alleged in the present case, I do not think that it can be said that the ordinary summary foreclosure under the Code furnishes as complete and adequate relief as a foreclosure in equity. It was alleged, in effect, that there was a fraudulent collusion between a husband and wife, by which he was allowed to hold himself out to the world as the owner of the land until he had incurred debts, and then to develop into a mere tenant of his wife, owing rent, for which she could proceed by summary process, when in fact there never was any relation of landlord and tenant between them,—in plain English, a trap to catch innocent outsiders, and yet to hold the property and its crops in the hands or control of the husband and wife. Fraud has always been an especial ground for seeking equitable relief. I do not think it any answer to this to say that the creditor might foreclose his mortgage by summary process under the statute, and, after a sale of the property by the sheriff, might then contest for the fund on a money rule. The only reason why he could make such a contest is that a money rule is a quasi-equitable proceeding. It does not seem to me to be a valid objection to proceeding at once by equitable methods to say that the plaintiff might first proceed by an ordinary foreclosure in equity and afterwards supplement this by a quasi-equitable proceeding in a money rule. I do not perceive how the fact that a man might have the right to two proceedings, one a proceeding at law to get the money into court, and another a quasi-equitable proceeding to attack the claims of the wife and get it out of court, furnishes any objection to having an equitable proceeding at the start, bringing in all of the questions and settling the entire matter in one action instead of in

two. It does not occur to me that this furnishes as complete and adequate relief as to permit the plaintiff to file an equitable action to settle all the issues in one suit. Nor do I think that the multiplicity of suits which would result, at least to the extent of two cases, one of which must be a quasi-equitable proceeding, furnishes any reason why he must be dismissed from the court when he brings an equitable proceeding to adjust all of his rights at the outset.

The fact that it appears that the plaintiff's mortgage covers the crops on some land additional to that claimed to have been rented, and that the exact amount of crops upon those lands is not shown, is not alone sufficient to make his equitable action subject to general demurrer. Nor was there any demurrer specifically raising the point that the value of the additional crops covered by the mortgage was not stated. The holder of the mortgage had a right to subject the entire security to the payment of his debt. The husband and wife, if they indulged in a fraudulent and collusive scheme as alleged in the petition, could not thereby say to the creditor: you must exhaust other property covered by your mortgage before unearthing and destroying the results of our fraud. Even if the property covered by the mortgage is on its face of more value than the amount of the mortgage, this does not affect the fact that the mortgagee has a right to look to all of it. Nor does it furnish a ground of demurrer to the alleged colluding husband and wife that the mortgagee might have other property covered by his mortgage, to which he could look, and leave them in undisturbed enjoyment of the results of their alleged fraud. I am unable to see that this petition was subject to demurrer, and I am therefore regretfully compelled to dissent from the opinion of the majority.

The question of what expenses shall be incurred in connection with a receivership is not before us on this demurrer. That is a question arising when the court is appealed to to allow fees or other expenses, and this court can not look through the allegations of a petition like the one before us, on the demurrer which is made, in order to conjecture that there may be improper or excessive fees allowed by the trial court, and therefore dismiss the case, otherwise proper, and showing no such facts.